SHEPHERD, FINKELMAN, MILLER
   & SHAH, LLP
JAMES C. SHAH
475 White Horse Pike
Collingswood, NJ 08107
Telephone: 856/858-1770
Facsimile: 866/300-7367
Email: jshah@sfmslaw.com

***Attorneys for Plaintiff and the Class***
**[Additional counsel on signature page]**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

JACQUELINE GREEK, on behalf of herself
and all others similarly situated,

                         Plaintiff,                 Civil Action _____

v.                                     **CLASS ACTION COMPLAINT**

DIET WORKS, LLC,               **JURY TRIAL DEMANDED**

                         Defendant.

_____/

**<u>CLASS ACTION COMPLAINT</u>**

Plaintiff, Jacqueline Greek, through her undersigned counsel, brings this action on her own behalf and on behalf of a Class of persons and entities defined herein against Defendant, Diet Works, LLC ("Defendant") and, for her Complaint, alleges, upon information and belief and based on the investigation to date of her counsel, as follows:

**<u>INTRODUCTION</u>**

1.      This is a class action brought individually by Plaintiff and on behalf of a class of persons similarly situated, (the "Class" or "Classes" or "Class Members"), who purchased the weight-loss dietary supplement Diet Works Garcinia Cambogia ("Product"). Plaintiff alleges that

1

Defendant's efficacy claims for the Product are false and misleading and that Defendant does not provide the represented amount of the active ingredient, hydroxycitric acid ("HCA"), in the Product.

2.      Sales of retail diet pills, combined with meal replacements, are in the billions of dollars in the United States on an annual basis.

3.      Defendant advertises, manufactures, markets, sells and distributes the Product that is sold in the growing and extremely competitive diet/weight-loss dietary supplement industry as a highly effective appetite suppressant, fat burner, and weight-loss pill.  Although Defendant boasts about the Product's efficacy on its labeling and in its advertising, none of the promised benefits is or can be delivered by the Product.

4.      To make matters worse, Defendant only provides approximately 44% of the amount of HCA claimed on the Product label.

5.      In late 2012, Dr. Mehmet Oz ("Dr. Oz.") of the highly popular TV show, "The Dr. Oz Show," claimed on his website that Garcinia Cambogia was the "Newest, Fastest Fat-Buster" and declared on his TV show, "Thanks to brand new scientific research, I can tell you about a revolutionary fat buster" with the words "No Exercise. No Diet. No Effort" on the screen behind him.

6.      In June 2014, Dr. Oz's representations regarding weight-loss products, including Garcinia Cambogia, were called into question by the United States Senate's Subcommittee on Consumer Protection, Product Safety, and Insurance, where Dr. Oz was called to testify.

7.      When presented with studies refuting the efficacy of Garcinia Cambogia, Dr. Oz testified that he could not be held responsible for what companies say about their products, and that he has toned down some of his language and will publish a list of products he believes can actually help people lose weight.

8.      With all the hype surrounding this new "miracle" diet pill, many dietary supplement manufacturers, including Defendant, have decided to exploit this opportunity to make money off the unassuming consumer, regardless of the science refuting its claims regarding the Product.

9.      As a result of Defendant's unfair, deceptive, fraudulent, unfair and misleading practices, Plaintiff and Class Members have been deceived into purchasing the Product which they would not otherwise have purchased, did not receive the benefit of their bargain, or would have purchased only at a substantially lower price than that charged by Defendant.

**JURISDICTION AND VENUE**

10.      This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5,000,000.00, exclusive of interests and costs, and many Members of the proposed Class are citizens of states different from that of the Defendant (who is domiciled and licensed in New Jersey and otherwise maintains its principal place of business in New Jersey).

11.      This Court has personal jurisdiction over Defendant because it conducts substantial business in this judicial district and division, and intentionally and purposefully directed the Product into the stream of commerce, including the sale and distribution of the Product, within the districts of New Jersey and throughout the United States from its headquarters in this district and division.

12.      Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this district and division, is subject to personal jurisdiction in this district and division, and therefore is deemed to be a citizen of this district and division. Additionally, Defendant has advertised in this district and division and received substantial revenues and profits from sales of its Product in this district and division; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred within this

district and division.  Throughout the class period, Defendant has directed its national false advertising campaign from this district and division such that Defendant's improper conduct emanates from this district and division.

## PARTIES

13.    Plaintiff is a resident and citizen of Oil City, Pennsylvania. Plaintiff purchased the Product in or about April 2015, from drleaonards.com.  Prior to purchase, Plaintiff read and relied on the false claims made by Defendant set forth in this Complaint regarding the Product.

14.    Defendant is a New Jersey limited liability company with its principal place of business located at 6 Henderson Drive, West Caldwell, New Jersey 07006.

## FACTUAL ALLEGATIONS

15.    Defendant unapologetically boasts about the efficacy of the main active ingredient, Garcinia Cambogia, in the Product, regardless of the overwhelming scientific literature refuting the fat burning, weight loss, and appetite suppression claims.

16.    Under information and belief, Defendant had access to, but knowingly and/or recklessly ignored all competent and reliable scientific evidence regarding the main active ingredient in the Product, Garcinia Cambogia - HCA.

17.    Defendant made false claims regarding the efficacy of the Product in providing weight loss, weight management and inhibiting fat production.

18.    Defendant also knowingly and/or recklessly under-dosed the Product's active ingredient, HCA.

*The Product's False and/or Misleading Labeling and Marketing Claims*
*Regarding Garcinia Cambogia*

19.    Defendant states the following false/misleading claims on the Product's label, as shown below:

a)    "Healthy Weight Management";

b)  "Promotes Weight Loss";

c)  "Inhibits Fat Production":

d)  "Suppresses Carbohydrate Cravings"; and

e)  "Garcinia Cambogia, the all-natural way to help reduce your appetite, burn more calories and suppress carbohydrate cravings to make losing weight faster and easier than ever!"



Recently people all over the world have discovered the health benefits of Dietworks™ Garcinia Cambogia, the all-natural way to help reduce your appetite, burn more calories and suppress carbohydrate cravings to make losing weight faster and easier than ever!†

Commonly known as Tamarind, the native Indonesian *Garcinia Cambogia*, this pumpkin shaped fruit, has been used for generations! The natural compound, *Garcinia Cambogia* contain HCA (Hydroxycitric acid) which has been shown to interrupt the conversion of sugars and starch into fat so the body naturally burns more stored fat.†

Dietworks™ Garcinia Cambogia is a revolutionary supplement designed for people concerned about their sugar and carbohydrate intake and want to help control the effects on their weight management goals. *Garcinia Cambogia* (HCA) is known for its appetite suppressing qualities and can also help provide natural energy which is another plus for those who are decreasing their calories and increasing their exercise in an effort to lose weight.†

*Garcinia Cambogia* (HCA), this powerhouse ingredient of fat fighting support may yield an even more impressive metabolic boost to shift fat burning into the next gear. Used in conjunction with a healthy diet and regular exercise program, Dietworks™ Garcinia Cambogia will make it easier than ever to reach your weight loss goals!†

20.     All of the labeling and marketing claims of Defendant regarding the Product are predicated on HCA, the active ingredient in the herbal compound Garcinia Cambogia, to inhibit the extramitochondrial enzyme, adenosine triphosphate (ATP)-citrate-lyase.

### Why Defendant's Labeling and Marketing Claims are False and/or Misleading Regarding Garcinia Cambogia

### Appetite Suppression

21.     Since HCA reportedly promotes weight loss, in part, through suppression of hunger, a study was conducted to determine the effects of HCA on appetitive variables. In the

study, the active treatment group did not exhibit better dietary compliance or significant correlations between appetitive variables and energy intake or weight change. The study did not support a satiety effect of HCA.[1]

22.    The study revealed that a two-week supplementation with HCA alone, or in combination with medium chain triglycerides, did not result in increased satiety compared to a placebo, in subjects losing bodyweight.[2]

23.    A similar study was performed in order to assess the effects of two weeks of supplementation with HCA alone, or combined with medium-chain triglycerides, on satiety and energy intake. Two weeks of supplementation with HCA alone or combined with medium chain triglycerides did not result in increased satiety or decreased energy intake compared to placebo in subjects losing bodyweight.[3]

### Increased Metabolism, Fat Burning and Weight Loss

24.    As Garcinia Cambogia (HCA) is considered to be a potential anti-obesity agent, a randomized controlled trial was conducted to evaluate the efficacy of Garcinia Cambogia for body weight and fat mass loss in overweight human subjects. Garcinia Cambogia failed to produce weight loss and fat mass loss beyond that observed with a placebo.[4]

25.    A study was performed with the objective of determining the effect of HCA on

---

[1] Mattes R, Bormann L. Effects of (-)-hydroxycitric acid on appetitive variables. *Physiol Behav* 2000, 71:87-94.

[2] Kovacs E, Westerterp-Plantenga M, Saris W. The effects of 2-week ingestion of (--)-hydroxycitrate and (--)-hydroxycitrate combined with medium-chain triglycerides on satiety, fat oxidation, energy expenditure and body weight. *Int J Obes Relat Metab Disord* 2001a, 25:1087-94.

[3] Kovacs E, Westerterp-Plantenga M, de Vries M, Brouns F, Saris W. Effects of 2-week ingestion of (-)-hydroxycitrate and (-)-hydroxycitrate combined with medium-chain triglycerides on satiety and food intake. *Physiol Behav* 2001b, 74:543-9.

[4] Heymsfield S, Allison D, Basselli J, Pietrobelli A, Greenfield D, Nunez C. Garcinia cambogia (Hydroxycitric Acid) as a potential antiobestiy agent. *J Am Med Assoc* 1998, 280: 1596-1600.

8

marker substrates of altered metabolism, as well as on respiratory quotient ("RQ") and energy expenditure ("EE") in humans, following an overnight fast and during a bout of exercise. The hypothesis was that supplementation with HCA would result in an increase in fat oxidation and metabolic rate, reflected by an increase in beta-hydroxybutyrate and EE and/or a decrease in RQ. In a fasted state and following three days of HCA treatment, RQ was not significantly lowered during rest or during exercise when compared with the placebo treatment. Treatment with HCA did not affect EE, either during rest or during moderately intense exercise. Furthermore, the blood substrates measured were not significantly different between treatment groups under the fasting conditions of this study. The results did not support the hypothesis that HCA alters the short-term rate of fat oxidation in the fasting state during rest or moderate exercise.[5]

26.     A study determined the effects of 2-week ingestion of HCA alone or combined with medium-chain triglycerides on fat oxidation, energy expenditure and body weight. Two-week supplementation with HCA alone or in combination with medium chain triglycerides did not result in increased fat oxidation, 24 h EE or bodyweight loss compared to a placebo, in subjects losing bodyweight.[6]

27.     An additional study was conducted to assess the effects of acute HCA supplementation on substrate metabolism at rest and during exercise in humans. The study found that HCA, even when provided in large quantities, does not increase total fat oxidation in vivo in

---

[5] Kriketos A, Thompson H, Greene H, Hill J. (-)-Hydroxycitric acid does not affect energy expenditure and substrate oxidation in adult males in a post-absorptive state. *Int J Obes Relat Metab Disord* 1999, 23:867-73.

[6] Kovacs E, Westerterp-Plantenga M, Saris W. The effects of 2-week ingestion of (--)-hydroxycitrate and (--)-hydroxycitrate combined with medium-chain triglycerides on satiety, fat oxidation, energy expenditure and body weight. *Int J Obes Relat Metab Disord* 2001a, 25:1087-94.

endurance-trained humans.[7]

28.     All of Defendant's claims regarding the Product and its ability to help with appetite control, fat burning and weight loss are false and/or misleading based upon the scientific literature and the dose of HCA contained in the Product.

***Defendant's Mislabeling of the Product by Under-Dosing the Main Active Ingredient, HCA***

29.     Defendant claims that the Product contains 500 mg of Garcinia Cambogia Extract, with 50% concentration of HCA:



---

[7] van Loon L, van Rooijen J, Niesen B, Verhagen H, Saris W, Wagenmakers A. Effects of acute (-)-hydroxycitrate supplementation on substrate metabolism at rest and during exercise in humans. Am J Clin Nutr 2000, 72:1445-50.

30. However, according to lab results, commissioned by Plaintiff's attorneys, the Product only contains roughly 44% of the claimed HCA,[8] or 111mg per serving:

### Table 2 – Results CDXA-17-003740

| Analyte | Units | Spec. | Result | Reporting Limit |
|---|---|---|---|---|
| Hydroxycitric Acid Free** | mg/serving | NA | 111 | – |
| Hydroxycitric Acid Lactone | mg/serving | NA | ND | 9.9 |
| **Total Hydroxycitric Acid** | mg/serving | 500 | 111 | – |
| Average Tablet Weight Serving Size: 1 tablet | mg | | 945 | |

31. This clear mislabeling of the Product renders it misbranded.

32. Plaintiff and Class Members were, in fact, misled by Defendant's representations regarding the true nature of the Product ingredients and value.

33. The difference between the Product promised and the Product sold is significant. The efficacy of the Product has real impacts on the benefits provided to consumers by the Product, and the actual value of the Product itself.

34. Defendant's deceptive statements violate the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 343(a)(1), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular."

35. Defendant's conduct is also deceptive and unfair in that it violates the prohibition against false or misleading labeling in Pennsylvania's Food Safety Act, 3 Pa.C.S.A. § 5721, *et seq*.

36. The introduction of misbranded food into interstate commerce is prohibited under the FDCA and the state parallel statute cited in this Class Action Complaint.

---

[8] The Product label has the express claim of "50% hydroxycitric acid," which equals 250 mg of claimed HCA.

37.     Plaintiff and Class Members would not have purchased the Product or would have paid less for the Product if they were aware of the misleading labeling of the Product by Defendant.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this class action on behalf of herself and all others similarly situated as Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure.

39.     Plaintiff seeks to represent a Nationwide Class defined as follows:

**National Class:**

All persons in the United States who purchased Defendant's Product.

40.     In the alternative, Plaintiff brings this action on behalf of the following state Class:

**Pennsylvania Class:**

All persons residing in the State of Pennsylvania who purchased Defendant's Product.

Excluded from the Classes are: Defendant and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Classes; all governmental entities; and the Judge to whom this case is assigned and any immediate family members thereof.

41.     Certification of the Plaintiff's claims for class wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

42.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The Members of the Classes are so numerous that individual joinder of all Class Members in impracticable. On information and belief, there are thousands of consumers who have been affected by the Defendant's wrongful conduct.  The precise number of the Class Members and their addresses is presently unknown to Plaintiff, but may be ascertained from the Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved

notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

43.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

     a)    Whether the Product, when used by consumers in a normal and customary manner and/or in accordance with Defendant's suggested use, works as advertised, marketed, and conveyed to consumers;

     b)    Whether, in the course of business, Defendant represented that the Product has characteristics, uses, benefits, or qualities that it does not have when used by consumers in a normal and customary manner and/or in accordance with Defendant's suggested use;

     c)    Whether the claims Defendant made and is making regarding the Product are unfair or deceptive; specifically, whether the Product provides fat burning, weight loss and/or appetite suppression properties to the consumer.

     d)    Whether Defendant knew at the time the consumer transactions took place that consumers would not receive the promised benefits of the Product that Defendant was claiming they would receive;

     e)    Whether Defendant knowingly made misleading statements in connection with consumer transactions that consumers were likely to rely upon to their detriment;

     f)    Whether Defendant knew or should have known that the representations and advertisements regarding the Product were unsubstantiated, false, and misleading;

     g)    Whether Defendant has breached express and implied warranties in the sale and marketing of the Product;

     h)    Whether Defendant's acts and omissions violated the consumer fraud acts;

     i)    Whether Defendant has been unjustly enriched by the sale of the Product to the Plaintiff and the Class Members;

     j)    Whether Plaintiff and the Class Members did not receive the benefit of their bargain when purchasing the Product;

     k)    Whether the Plaintiff and the Class Members suffered monetary damages, and, if so, what is the measure of those damages;

    l)   Whether Plaintiff and the Class Members are entitled to an injunction, damages, restitution, equitable relief, and other relief deemed appropriate, and, if so, the amount and nature of such relief.

44.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the other Class Members' claims because, among other things, all Class Members were similarly injured through the uniform and common misconduct described above.

45.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)**. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other Class Members she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously.  The Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel.

46.    **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class Members as a whole.

47.    **Superiority – Federal Rule of Civil Procedure 23(b)(3)**.  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress from Defendant's wrongful conduct.  Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.

By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT**
**(N.J.S.A. § 56:8-1, *et seq*.)**
**On Behalf Of The Nationwide Class**

48.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

49.     Plaintiff and Defendant are "persons" within the meaning of the New Jersey Consumer Fraud Act ("CFA").

50.     Plaintiff and the Members of the Class are "consumers" within the meaning of the CFA.

51.     At all relevant times material hereto, Defendant conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

52.     The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

53.     Defendant's practices violated the CFA for, *inter alia*, one or more of the following reasons:

a.     Defendant represented to Plaintiff and the Class that the Product had approval or characteristics that it did not have;

b.     Defendant represented to Plaintiff and the Class that the Product was of a particular standard, quality, or grade when it was actually of another;

c.     Defendant advertised to Plaintiff and the Class goods with intent not to sell them as advertised;

d.      Defendant engaged in other fraudulent or deceptive conduct creating a likelihood of confusion or misunderstanding; and

e.      Defendant represented that consumers' purchases of the Product conferred or involved rights that the transactions did not have or involve.

54.      Defendant consciously omitted to disclose material facts to Plaintiff and the Class with respect to the Product.

55.      Defendant intended that Plaintiff and Class rely on its acts of concealment and omissions and misrepresentations, so that Plaintiff and the Class would purchase the Product.

56.      Had Defendant disclosed all material information regarding the Product to Plaintiff and the Class, they would not have purchased the Product, or would have paid less for the Product.

57.      The foregoing acts, omissions and practices proximately caused Plaintiff and the Class to suffer an ascertainable loss in the form of monetary damages, and they are entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

## COUNT II
## BREACH OF EXPRESS WARRANTY
### (N.J. Stat. Ann. § 12A:2-313)
### On Behalf Of The Nationwide Class

58.      Plaintiff incorporates the allegations set forth above as if fully set forth herein.

59.      As an express warrantor and manufacturer and merchant, Defendant had certain obligations under N.J. Stat. Ann. § 12A:2-313 to conform the Product to the express warranties.

60.      Plaintiff, and each Member of the Class formed a contract with Defendant at the time Plaintiff and the other Class Members purchased the Product.  The terms of the contract include the promises and affirmations of fact made by Defendant on the Product's packaging and through marketing and advertising, as described above.  This labeling, marketing and advertising

constitute express warranties and became part of the basis of bargain, and are part of the standardized contract between Plaintiff and the members of the Class and Defendant.

61.    Defendant purports through its advertising, labeling, marketing and packaging to create an express warranty that the Product was effective at providing weight loss and appetite suppression.

62.    Plaintiff and the Class Members performed all conditions precedent to Defendant's liability under this contract when they purchased the Product.

63.    Defendant breached express warranties about the Product and its qualities because Defendant's statements about the Product were false and the Product does not conform to Defendant's affirmations and promises described above.  Plaintiff and the Class Members would not have purchased the Product had they known the true nature of the Product's ingredients and what the Product contained.

64.    Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

65.    As a result of Defendant's breach of warranty, Plaintiff and Class Members have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from the purchases.

### COUNT III
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.J. Stat. Ann. § 12A:2-314)
### On Behalf Of the Nationwide Class

66.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

67.    Defendant is and was at all relevant times a merchant with respect to the Product.

68.    A warranty that the Product was in merchantable quality and condition is implied by law pursuant to N.J. Stat. Ann. § 12A:2-314.

69.     Defendant impliedly warranted that the Product was of good and merchantable condition and quality – fit and safe for their ordinary intended use.

70.     The Product was defective at the time it left the possession of Defendant, as set forth above, and Defendant knew of this defect at the time these transactions occurred.  Thus, the Product, when sold and at all times thereafter, was not in merchantable condition or quality and is not fit for its ordinary intended purpose.

71.     By virtue of the conduct described herein and throughout this Complaint, Defendant breached the implied warranty of merchantability.

72.     Plaintiff and Class Members have been damaged as a direct and proximate result of Defendant's breach of the implied warranty.

73.     Plaintiff has used the Product in a manner consistent with its intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's conduct.

74.     Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

75.     As a direct and proximate result of Defendant's breach of warranties, Plaintiff and the Class were caused to suffer damages.

**COUNT IV**
**BREACH OF EXPRESS WARRANTY**
**(Pa.C.S. § 2313)**
**Alternatively, On Behalf Of The Pennsylvania Class**

76.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

77.     As an express warrantor and manufacturer and merchant, Defendant had certain obligations under Pa.C.S. § 2313 to conform the Product to the express warranties.

78.    Plaintiff, and each Member of the Pennsylvania Class formed a contract with Defendant at the time Plaintiff and the other Class Members purchased the Product. The terms of the contract include the promises and affirmations of fact made by Defendant on the Product's packaging and through marketing and advertising, as described above. This labeling, marketing and advertising constitute express warranties and became part of the basis of bargain, and are part of the standardized contract between Plaintiff and the Members of the Pennsylvania Class and Defendant.

79.    Defendant purports through its advertising, labeling, marketing and packaging to create an express warranty that the Product was effective at providing weight loss and appetite suppression.

80.    Plaintiff and the Pennsylvania Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Product.

81.    Defendant breached express warranties about the Product and its qualities because Defendant's statements about the Product were false and the Product does not conform to Defendant's affirmations and promises described above. Plaintiff and the Pennsylvania Class Members would not have purchased the Product had they known the true nature of the Product's ingredients and what the Product contained.

82.    Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

83.    As a result of Defendant's breach of warranty, Plaintiff and Pennsylvania Class Members have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from the purchases.

**COUNT V**
**BREACH OF IMPLIED WARRANTY**
(Pa.C.S § 2314)
**Alternatively, On Behalf Of The Pennsylvania Class**

84.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

85.     Defendant is and was at all relevant times a merchant with respect to the Product.

86.     A warranty that the Product was in merchantable quality and condition is implied by law pursuant to Pa.C.S § 2314.

87.     Defendant impliedly warranted that the Product was of good and merchantable condition and quality – fit for its ordinary intended use.

88.     The Product, which is a supplement intended for human consumption, was sold in a sealed container to the Pennsylvania Class Members.  Because the Product was sold in a sealed container for human consumption, public policy demands that an implied warranty be imposed upon the manufacturer, packager, and distributor of the Product, and that said warranty runs with the sale of the Product for the benefit of consumer use.

89.     Defendant knew and intended that the Pennsylvania Class Members would be the ultimate consumers of the Product.

90.     Defendant sold the Product into the stream of commerce, and Defendant is a merchant with respect to goods such as the Product at issue.

91.     The Product was not merchantable at the time of sale, because it did not—nor could not—have any impact related to the representations as alleged herein.

92.     The Plaintiff and Pennsylvania Class Members did not receive the benefit of their bargain in purchasing the Product.

93.     Because of Defendant's breach of the implied warranty, the Plaintiff and Pennsylvania Class Members were injured.

94.     Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

95.     As a result of Defendant's breach, Plaintiff and Pennsylvania Class Members have sustained damages.

## COUNT VI
## VIOLATIONS OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. § 201-1, *et seq.*
## Alternatively, On Behalf Of The Pennsylvania Class

96.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

97.     Plaintiff and the Members of the proposed Pennsylvania Class purchased dietary supplements containing Garcinia Cambogia (HCA) for personal, family, or household purposes within the meaning of 73 P.S. § 201-9.2.

98.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law prohibits engaging in fraudulent or deceptive conduct (i) representing that goods have characteristics, benefits, or qualities that they do not have; (ii) representing that goods or services are of a particular standard, quality, or grade, if they are of another; (iii) advertising goods or services with the intent not to sell them as advertised; and (iv) engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4).

99.     Defendant's acts and practices, as alleged in this complaint, violate the Pennsylvania Unfair Trade Practices and Consumer Protection Law by engaging in unfair methods of competition and unfair and deceptive acts and practices in connection with transactions—namely, the sale of the dietary supplements with Garcinia Cambogia (HCA) to Plaintiff and members of the Pennsylvania Class.  This conduct was intended to result and did result in the sale of these goods to consumers.  Specifically, Defendant:

a) Represented that the Product had approval or characteristics that it did not have;

b) Represented that the Product was of a particular standard, quality, or grade when it was actually of another;

c) Advertised goods or services with intent not to sell them as advertised;

d) Engaged in other fraudulent or deceptive conduct creating a likelihood of confusion or misunderstanding; and

e) Represented that consumers' purchases of the Product conferred or involved rights that the transactions did not have or involve.

100. Defendant's conduct was also deceptive and unfair in that it violated the prohibition against false or misleading labeling in Pennsylvania's Food Safety Act, 3 Pa.C.S.A. § 5721, *et seq*.

101. As a direct and proximate result of Defendant's conduct, Plaintiff and the Members of the Pennsylvania Class have been harmed and have suffered ascertainable loss, in that they purchased products that they otherwise would not have. Meanwhile, Defendant has generated more revenue than it otherwise would have, unjustly enriching itself. Defendant's violations also present a continuing risk to Plaintiff and Members of the Class and affect the public interest.

102. Plaintiff and Members of the Pennsylvania Class are entitled to damages (including treble damages), equitable relief, reasonable attorney's fees and costs, declaratory relief, and a permanent injunction enjoining Defendant from its unlawful, fraudulent, and deceitful activity.

## COUNT VII
## FRAUD BY UNIFORM WRITTEN MISREPRESENTATION AND OMISSION
### Alternatively, On Behalf Of The Pennsylvania Class

103.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

104.    Defendant uniformly, and intentionally, willfully, falsely, and knowingly, misrepresented material facts in writing that relate to the character and quality of the Product. Specifically, Defendant intentionally and willfully misrepresented certain benefits and performance characteristics of the Product in various media advertising and point of sale materials disseminated or caused to be disseminated by Defendant.

105.    Defendant represented to Pennsylvania Class Members, by affirmative misrepresentations and omissions, that the Product provides benefits over and above what could actually be achieved, even though Defendant had no competent, credible, and reliable scientific evidence that is sufficient in quality and quantity, based on standards generally acceptable in the relevant scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate its claims regarding the superior effectiveness of the Product.

106.    Defendant's uniform written misrepresentations were made with the intent that the general public, including Plaintiff and Class, would rely upon them. Defendant's representations were made with knowledge of the falsity of such statements or in reckless disregard of the truth thereof and gave Defendant an unjust advantage and caused a loss to Plaintiff and Class Members. Defendant's claims of superior effectiveness are so central to the consumer's selection of the Product that Defendant knew and intended that consumers would rely on those misrepresentations in determining whether to purchase the Product.

107.    In actual and reasonable reliance upon Defendant's misrepresentations, Plaintiff and Pennsylvania Class Members purchased the Product for their intended and reasonably foreseeable purposes.  Plaintiff and Pennsylvania Class Members were unaware of the true facts concerning the effectiveness of the Product, which were concealed from the Plaintiff and the Class

Members.  If Plaintiff and Pennsylvania Class Members had been aware of these concealed facts, Plaintiff and Pennsylvania Class Members would not have purchased the Product.  Plaintiff's and Class Members' reliance on the representations of the Defendant was reasonable.

108.    Defendant misrepresented material facts with the intent to defraud Plaintiff and the Pennsylvania Class Members.  Plaintiff and the Class Members were unaware of the intent of Defendant and relied upon these representations in agreeing to purchase the Product.

109.    In actual and reasonable reliance upon Defendant's misrepresentations, Plaintiff and Pennsylvania Class Members purchased the Product and did not benefit from the Product as represented, the direct and proximate result of which was injury and harm to Plaintiff and Class Members because:

    a)  they would not have purchased the Product if the true facts concerning its effectiveness had been known; and

    b)  the Product did not (and cannot) perform as promised.

110.    As a result of Defendant's conduct, Plaintiff and Pennsylvania Class Members have sustained damages.

**COUNT VIII**
**UNJUST ENRICHMENT**
**On Behalf Of The Nationwide Class Or, Alternatively, The Pennsylvania Class**

111.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

112.    Through its numerous misleading, unfair and deceptive claims and misrepresentations, Defendant made millions of dollars from the sale of the Product.  The considerable profits were made at the expense of Plaintiff and each Member of the Class, who relied upon Defendant's material representations and omissions.

113.    Plaintiff and Class Members conferred benefits on Defendant by purchasing the Product, which Defendant knowingly appreciated and accepted.

114.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Members' purchase of the Product.  Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Product was misleading to consumers, which caused injuries to Plaintiff and Class Members because they would have not purchased the Product if the true facts had been known.

115.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class Members for Defendant's unjust enrichment, as ordered by the Court.

**COUNT IX**
**DECLARATORY RELIEF UNDER THE DECLARATORY**
**JUDGMENT ACT**
**On Behalf Of The Nationwide Class Or, Alternatively, The Pennsylvania Class**

116.    Plaintiff incorporates the allegations set forth above as if fully set forth herein.

117.    Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages."  10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

118.    Pursuant to 28 U.S.C. § 2201, *et seq.*, there is an actual controversy between Defendant and Plaintiff concerning whether:

    a)  Defendant has misrepresented the effectiveness of the Product; and

    b)  Defendant knew or should have known of the misrepresentations regarding the efficacy of the Product.

119.    Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

120.    Despite the studies which have proven Defendant's representations false, Defendant continues to represent the effectiveness of the Product, and has otherwise failed to correct those misrepresentations.

121.    Accordingly, based on Defendant's repeated and continued misrepresentations, Plaintiff seeks a declaration that Defendant has misrepresented the efficacy of the Product and that its actions are unlawful.

122.    The declaratory relief requested herein will generate common answers that will settle the controversy related to the misrepresented labeling of the Product.  There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, Jacqueline Greek, on behalf of herself and all others similarly situated, respectfully requests that the Court enter an Order awarding the following relief:

A.    Declaring that this action may be maintained as a class action, certifying the Classes as requested herein, appointing Plaintiff as the Class Representative, and appointing the undersigned as Class Counsel;

B.    Enjoining Defendant from the unlawful practices and statutory violations asserted herein;

C.    Declaring Defendant's practices to be unlawful;

D.    A judgment awarding Plaintiff and each of the other Members of the Classes their actual damages in an amount according to proof as to Defendant's unlawful conduct, as alleged herein;

E.    A judgment awarding Plaintiff and each of the other Members of the Classes compensatory, consequential, and special damages in amounts to be proven at trial, as well as statutory damages;

F.    An award of punitive damages, to the maximum extent permitted by law;

G.  A judgment awarding Plaintiff and the other members of the Classes restitution, including, without limitation, disgorgement of all profits and unjust enrichment obtained by Defendant as a result of its wrongful conduct, as alleged herein;

H.  An award of delay damages, to the maximum extent permitted by law;

I.  Attorneys' fees, expenses, and the costs of this action to the maximum extent permitted by law;

J.  An award of pre- and post-judgment interest; and

K.  All other and further relief that the Court deems necessary, just, and proper.

## JURY DEMAND

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff, Jacqueline Greek, hereby demands a trial by jury of all claims in this Class Action Complaint so triable.

Date: June 27, 2016                    Respectfully submitted,

**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**

By:    /s/ James C. Shah
       James C. Shah
       475 White Horse Pike
       Collingswood, NJ  08107
       Telephone: 856/858-1770
       Facsimile: 866/300-7367
       Email: jshah@sfmslaw.com

       Nick Suciu III (*Pro Hac Vice Forthcoming*)
       **BARBAT, MANSOUR & SUCIU PLLC**
       1644 Bracken Rd.
       Bloomfield Hills, MI 48302
       Tel: (313) 303-3472
       Fax: (248) 698-8634
       Email: nicksuciu@bmslawyers.com

Jonathan Shub (*Pro Hac Vice Forthcoming*)
Kevin Laukaitis *(Pro Hac Vice Forthcoming)*
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107-3304
Tel: (215) 238-1700
Fax: (215) 238-1968
Email:   jshub@kohnswift.com
            klaukaitis@kohnswift.com

Gregory F. Coleman (*Pro Hac Vice Forthcoming*)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone:  (865) 247-0080
Facsimile:  (865) 533-0049
Email:  greg@gregcolemanlaw.com

*Attorneys for Plaintiff and the Class*